**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

ROY NELMS, JR.,

   Plaintiff,                            CASE NO.:

-VS-

NAVY FEDERAL FINANCIAL
GROUP, LLC,

   Defendant.

_____/

## COMPLAINT

1.     Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2.     The TCPA was enacted to prevent companies like NAVY FEDERAL FINANCIAL GROUP, LLC, ("Navy Federal"), from invading American citizens' privacy and prevent abusive "robo-calls."

3.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.      "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.  Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

6.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. The alleged violations described herein occurred in Walton County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Loganville, Walton County, Georgia.

11.     Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Defendant is a Foreign Limited Liability Company with its principal place of business located at 820 Follin Lane, Vienna, VA 22180, and which conducts business in the State of Georgia through its registered agent, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Ben Hill, Norcross, Georgia 30092.

13.     Plaintiff was/is the regular user and carrier of the cellular telephone numbers at issue, (770) ***-4010 and (207) ***-4450, and was the called party and recipient of Defendant's hereinafter described calls.

14.     Plaintiff does not now, nor has he ever, entered into a business relationship with Defendant.

15.     In or about 2011, Plaintiff began receiving calls to his aforementioned cellular telephone from Defendant.

16.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (888) 842-6328 and (540) 722-1054, and when those numbers are called, a pre-recorded message answers "Welcome to Navy Federal Credit Union.

Please enter your access number followed by the pound sign.  If you're not a member press the star key…"

17.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because when he answered a call from the Defendant he would hear either an automated message telling his the call was from NFCU or an extended pause before a live agent/representative of Defendant would come on the line.

18.     Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

19.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

20.     In or about August of 2012, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, met with an automated message, held the line, was eventually connected to a live representative, and informed an agent/representative of Defendant that he did not have an account with them, that he was not responsible for any alleged debt, and demanded that they cease calling his aforementioned cellular telephone number.

21.     During the aforementioned telephone call with Defendant in or about August of 2012, Plaintiff unequivocally revoked any express consent Defendant may have mistakenly believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22.     Each and every call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23.     Each and every subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff informing Defendant that he was not the individual for whom they were calling.

25.     On at least ten (10) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding his account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number. His principal reason for answering these calls and making these demands of Navy Federal was the cumulative injury and annoyance he suffered from the calls placed by Navy Federal.  These injuries are further described in paragraphs 28 through 34 herein.

26.     The Plaintiff's request for the harassment to end by informing them that he was not the individual for whom there were calling was ignored.

27.     From approximately September of 2013 through the filing of this Complaint, Defendant has placed approximately one thousand five hundred (1,500) calls to Plaintiff's aforementioned cellular telephone number. The exact number of calls will be established after a thorough review of Defendant's records.

28.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

29.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the

phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

30.    From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

31.    Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

32.    Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

33.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

34.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, frustration, anxiety and aggravation.

35.     Defendant's corporate policy is structured so as to continue to call individuals like the Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

36.     Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

37.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

38.     Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

39.     Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

40.     Defendant violated the TCPA with respect to the Plaintiff.

41.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

42.     Plaintiff realleges and incorporates paragraphs one (1) through forty-one (41) above as if fully set forth herein.

43.     Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff was not the individual for whom the Defendant was calling, and wished for the calls to stop.

44.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NAVY FEDERAL FINANCIAL GROUP, LLC for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

s/ Octavio Gomez

Octavio Gomez, Esquire
Georgia Bar No.: 617963
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: ((813) 223-5505
TGomez@ForThePeople.com
LCrouch@ForThePeople.com
*Attorney for Plaintiff*